IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MILLERKING, LLC, on behalf of itself, and all other similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> DONOTPAY, INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) Case No. 23-cv-00863-NJR |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT WITH PREJUDICE PURSUANT TO RULES  12(B)(1) AND 12(B)(6)**

**TABLE OF CONTENTS**

Page

INTRODUCTION .................................................................................................................. 1

FACTS ................................................................................................................................... 2

LEGAL STANDARD ............................................................................................................ 5

ARGUMENT ......................................................................................................................... 6

I.   Plaintiff Fails to Plead Article III Standing ................................................................ 6

    A.   Plaintiff Does Not Plead an "Injury-in-Fact" .................................................. 7

II.  Plaintiff's Lanham Act Claims Must be Dismissed .................................................. 10

    A.   Plaintiff Lacks Statutory Standing ................................................................. 10

III. Plaintiff's IUDTPA Claim Must Be Dismissed ........................................................ 11

    A.   Plaintiff Lacks Statutory Standing ................................................................. 11

    B.   DNP's Challenged Activity Did Not Occur "Primarily and Substantially" in Illinois .......................................................................................................... 12

IV.  If Only Count IV Survives, the Court Should Decline to Exercise Supplemental Jurisdiction Over that Claim ..................................................................................... 13

CONCLUSION .................................................................................................................... 13

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*AAVN, Inc. v. WestPoint Home, Inc.*,
  No. 17 Civ. 8329, 2019 WL 1168102 (N.D. Ill. Mar. 13, 2019) ........................... 10, 11, 12

*Alan Ross Mach. Corp. v. Machinio Corp.*,
  No. 17 Civ. 3569, 2018 WL 6018603 (N.D. Ill. Nov. 16, 2018) ......................................... 11

*Allgire v. HOVG, LLC*,
  No. 16 Civ. 981, 2017 WL 1021394 (S.D. Ind. Mar. 16, 2017) ........................................... 9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................................................. 6

*Avery v. State Farm Mut. Auto. Ins. Co.*,
  216 Ill. 2d 100 (Ill. 2005) ................................................................................................ 2, 12

*BCBSM, Inc. v. Walgreen Co.*,
  512 F. Supp. 3d 837 (N.D. Ill. 2021) ................................................................................. 12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................................. 6

*Blanco v. Bath & Body Works, LLC*,
  No. 22 Civ. 01207, 2022 WL 1908980 (N.D. Ill. June 3, 2022) ......................................... 6

*Brooks v. Ross*,
  578 F.3d 574 (7th Cir. 2009) ............................................................................................... 6

*Bryant v. Compass Grp. USA, Inc.*,
  958 F.3d 617 (7th Cir. 2020) ............................................................................................. 10

*Carney v. Adams*,
  141 S. Ct. 493 (2020) ........................................................................................................... 9

*Casillas v. Madison Ave. Assocs., Inc.*,
  926 F.3d 329 (7th Cir. 2019) ......................................................................................... 1, 10

*Collier v. SP Plus Corp.*,
  889 F.3d 894 (7th Cir. 2018) ........................................................................................... 6, 9

*Colon v. Dynacast, LLC*,
  No. 19 Civ. 4561, 2019 WL 5536834 (N.D. Ill. Oct. 17, 2019) .......................................... 9

*Dahl v. Kohn L. Firm*,
  853 F. App'x 1 (7th Cir. 2020) ........................................................................................... 7

*FireBlok IP Holdings, LLC v. Hilti, Inc.*,
  No. 19 Civ. 50122, 2021 WL 6049964 (N.D. Ill. Dec. 21, 2021) ................................. 2, 12

*Gimix, Inc. v. JS & A Grp., Inc.*,
    699 F.2d 901 (7th Cir. 1983) ..................................................................................................12

*Groshek v. Time Warner Cable, Inc.*,
    865 F.3d 884 (7th Cir. 2017) ....................................................................................................8

*In re Fluidmaster, Inc.*,
    149 F. Supp. 3d 940 (N.D. Ill. 2016) ........................................................................................6

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ............................................................................................................2, 10

*LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*,
    809 F. Supp. 2d 857 (N.D. Ill. 2011) ................................................................................12, 13

*Life After Hate, Inc. v. Free Radicals Project, Inc.*,
    No. 18 Civ. 6967, 2020 WL 1903956 (N.D. Ill. Apr. 16, 2020) ............................................12

*McNamara v. City of Chic.*,
    138 F.3d 1219 (7th Cir. 1998) ..................................................................................................7

*Moyer v. Michaels Stores, Inc.*,
    No. 14 Civ. 561, 2014 WL 3511500 (N.D. Ill. July 14, 2014) ................................................7

*Pennell v. Glob. Tr. Mgmt., LLC*,
    990 F.3d 1041 (7th Cir. 2021) ..................................................................................................8

*Platinumtel Commc'ns, LLC v. Zefcom, LLC*,
    No. 08 Civ. 1062, 2008 WL 5423606 (N.D. Ill. Dec. 30, 2008) ............................................12

*Silha v. ACT, Inc.*,
    807 F.3d 169 (7th Cir. 2015) .................................................................................................6, 7

*Simon v. E. Kentucky Welfare Rts. Org.*,
    426 U.S. 26 (1976) ....................................................................................................................7

*Smith v. Health Care Serv. Corp.*,
    No. 19 Civ. 7162, 2021 WL 963814 (N.D. Ill. Mar. 15, 2021) ...............................................8

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ................................................................................................................10

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ..................................................................................................................9

*Thole v. U. S. Bank N.A*,
    140 S. Ct. 1615 (2020) ..............................................................................................................7

*Thrasher-Lyon v. Illinois Farmers Ins. Co.*,
    861 F. Supp. 2d 898 (N.D. Ill. 2012) ........................................................................................9

*TWD, LLC v. Grunt Style LLC*,
    No. 18 Civ. 7695, 2019 WL 5420153 (N.D. Ill. Oct. 23, 2019) ............................................10

*Williams Elecs. Games, Inc. v. Garrity*,
    479 F.3d 904 (7th Cir. 2007) ..............................................................................13

**STATUTES**

15 U.S.C. § 1125(a) ...........................................................................................................4

15 U.S.C. § 1125(a)(1)(A) .................................................................................................4

15 U.S.C. § 1125(a)(1)(B) .................................................................................................4

28 U.S.C. 1367(c)(3) .......................................................................................................13

Illinois Uniform Deceptive Trade Practices Act ..................................................... *passim*

Lanham Act ............................................................................................................ *passim*

**RULES**

Fed. R. Civ. P. 12(b)(1) .................................................................................................2, 6

Fed. R. Civ. P. 12(b)(6) .........................................................................................1, 4, 1, 6

**INTRODUCTION**

The Court should dismiss this case because Plaintiff MillerKing, LLC (an Illinois law firm) has not alleged any cognizable business injury caused by Defendant DoNotPay, Inc. ("DNP") (a Delaware-incorporated technology company). Plaintiff seeks to target DNP's offerings to consumers, claiming that DNP creates the false impression that DNP is affiliated with licensed attorneys and/or applicable state attorney licensing authorities, and that this impacts Plaintiff's relationships with clients and potential clients. Yet the Complaint can muster only conclusory and boilerplate allegations of harm, which federal courts reject under Rule 12(b)(6). Plaintiff therefore lacks constitutional or statutory standing to pursue its claims under the Lanham Act and Illinois's Deceptive Trade Practices Act, and, accordingly, this case must be dismissed. And, even if Plaintiff did have standing, it fails to state a claim for the reasons described below.

*First*, Plaintiff has not alleged (and cannot allege) any "injury-in-fact" as required to confer standing to pursue *any* claim in federal court. It is fundamental that "Article III grants federal courts [only] the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 332 (7th Cir. 2019). Accordingly, Article III standing requires that a plaintiff "must allege an injury in fact that is traceable to the defendant's conduct and redressable by a favorable judicial decision." *Id.* at 333.

Here, while the Complaint asserts that DNP has violated various state and federal laws, it lacks any plausible allegation that such purported violations have actually harmed the *Plaintiff*. For example, the Complaint does not contain any well-pled allegation that DNP caused harm to Plaintiff's revenue, reputation, goodwill or any other interest. As a result, Plaintiff does not have

1

standing to sue, this Court therefore lacks subject matter jurisdiction, and the case must be dismissed pursuant to Federal Rule 12(b)(1).

**Second**, Plaintiff lacks statutory standing under the Lanham Act for the same fundamental reasons.  Under the Lanham Act, a plaintiff must plead "economic or reputational injury flowing directly from the [alleged] deception wrought by defendant's advertising . . . occur[ring] when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014).  Here, Plaintiff does not allege that any consumer has withheld trade – let alone as a consequence of any "deception" by DNP.

**Third**, Plaintiff's claim for violations of the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA") fails for much the same reason as the Lanham Act claims (want of statutory standing) *and* for the independent reason Plaintiff cannot allege that DNP's challenged conduct arose "primarily and substantially in Illinois." *See Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 187 (Ill. 2005) (IUDTPA claim requires that "the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois").  Rather, Plaintiff alleges – as it must – that DNP offers services nationwide, albeit "including in Chicago, Illinois," which does not satisfy the "primarily and substantially" test. *See, e.g.*, *FireBlok IP Holdings, LLC v. Hilti, Inc.*, No. 19 Civ. 50122, 2021 WL 6049964, at *4 (N.D. Ill. Dec. 21, 2021) (dismissing IUDTPA claim where challenged conduct was "alleged to occur throughout the United States, and Illinois just happens to be one of those states").

**FACTS**

**The Parties:**  Plaintiff MillerKing, LLC is a six-attorney law firm in Illinois which "provides legal services across various practice areas including personal injury . . . criminal law . . . workers' compensation" and many others. Compl. ¶ 8.  Defendant DoNotPay, Inc. is a privately

2

held technology company incorporated in Delaware and with its principal place of business in Aspen, Colorado.[1]  DNP's business is to leverage technology to help its customers accomplish certain administrative tasks, such as contesting parking tickets and demanding owed refunds, quickly and at low cost.

**Plaintiff's Allegations:**  Plaintiff alleges that DNP "holds itself out as 'The World's First Robot Lawyer'" and "offers to perform legal work" using an "artificially intelligent robot attorney."  *Id.* ¶¶ 25, 28, 29.  As examples of DNP's services, Plaintiff identifies offers to prepare a "Non-Compete Agreement" and a "Residential Lease Agreement[,]" among others.  *Id.* ¶¶ 35, 37.  With respect to the Residential Lease Agreement offering, Plaintiff notes that DNP advertises that service as available in "any American state, including Florida, Texas, and California."  *Id.* ¶ 37.  Plaintiff identifies only two DNP offerings that are even alleged to be *available* to Illinois residents – a property tax appeal service and parking ticket contesting service (*id.* ¶¶ 40, 41) – neither of which is alleged to be exclusively, or even primarily, marketed to citizens of Illinois.  The Complaint does not allege that Plaintiff has ever provided (or that Plaintiff plans to provide) such property tax appeal or parking ticket contesting services to its clients.

Plaintiff next avers that certain anonymous customers have posted online reviews expressing dissatisfaction with DNP's services.  *Id.* ¶¶ 60-63.  Plaintiff draws no connection whatsoever between itself and these purported unsatisfied customers, nor does Plaintiff make any attempt to quantify the volume of dissatisfied customers relative to DNP's total subscriber base.

On these allegations, and these alone, Plaintiff brought this action against DNP.  Strikingly, the Complaint contains *zero* allegations regarding any harm that DNP's alleged wrongdoing may

---

[1] The Complaint's allegation that DNP's principal place of business is in California (¶ 9) is mistaken. Since at least January 2022, substantially all of DNP's business operations have been conducted from Colorado.

3


have wrought upon Plaintiff. Plaintiff does not allege, for instance, that any actual or prospective client has rejected Plaintiff's services in favor of DNP's. In fact, Plaintiff does not allege that any client or prospective client has even *heard of* DNP. Moreover, Plaintiff does not allege any lost revenue, business, or goodwill that is remotely attributable to DNP's activity. Simply, the Complaint draws no meaningful connection between Plaintiff and DNP *at all*.

Nevertheless, Plaintiff asserts four claims for relief, supposedly on behalf of two putative classes: the "Class," which consists of "all law firms in the United States," and a smaller "Subclass," which consists only of "law firms . . . registered with the Illinois Supreme Court to practice law in Illinois." *Id.* ¶¶ 74-75.

On behalf of the larger putative Class, Plaintiff asserts two claims under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) – first for "false affiliation" in violation of § 1125(a)(1)(A) and second for "false advertising" in violation of § 1125(a)(1)(B). *See id.* ¶¶ 86-117. The false affiliation claim (Count I) is based on alleged statements attributed to DNP which Plaintiff claims (in sum and substance) create the false impression that DNP is affiliated with licensed attorneys and/or applicable state attorney licensing authorities. *See id.* ¶ 92. The false advertising claim (Count II) similarly asserts that DNP made misleading statements tending to indicate that DNP's "services and products [] will be provided via a robot 'lawyer' and 'attorney'" and that such statements are misleading because "Defendant is not authorized to provide the legal services and products it advertises will be provided." *Id.* ¶¶ 107-108.

As for injury accruing to Plaintiff as a result of DNP's alleged Lanham Act violations, the Complaint contains only the boilerplate, conclusory statements that:

- With respect to Count I: "Plaintiff and the Class have been or are likely to be injured as a result of the Representations and confusing, mistaken, and/or deceptive affiliation, connection, association, sponsorship, or approval, either by direct diversion of clients from

- themselves to Defendant or by a lessening of the goodwill associated with their goods and services." *Id.* ¶ 95; and

- With respect to Count II: "Plaintiff and the Class have been or are likely to be injured as a result of the false and/or misleading Representations, either by direct diversion of clients from themselves to Defendant or by a lessening of the goodwill associated with their goods and services." *Id.* ¶ 110.

Not a single particularized allegation of actual injury is asserted anywhere in Plaintiff's Complaint.

In addition to its Lanham Act claims, Plaintiff asserts two Illinois state law claims on behalf of the smaller putative "Subclass" of Illinois-registered law firms. At Count III, Plaintiff asserts a claim for violations of the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA") (815 ILCS 510/1 *et seq.*) based on substantially the same conduct underlying the Lanham Act claims. *See id.* ¶¶ 118-125. And finally, at Count IV, Plaintiff asserts a claim for the "unauthorized practice of law" – averring that DNP has "engag[ed] in the practice of law in Illinois" and has "advertis[ed] and "h[eld] itself out as providing legal services within Illinois," both without a license. *Id.* ¶¶ 126-134.

The allegations as to injury under the state law claims are even *thinner* than those asserted in connection with Plaintiff's Lanham Act claims. On its IUDTPA claim, Plaintiff alleges only – in the most conclusory terms – that "Plaintiff and the Subclass Members are likely to be damaged by Defendant's deceptive trade practices." *Id.* ¶ 123. And, most gallingly, Plaintiff does not allege that it was injured by DNP's supposed "unauthorized practice of law" *at all*.

**LEGAL STANDARD**

"When evaluating a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court should use *Twombly–Iqbal's* 'plausibility' requirement, which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)." *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015). That is, "[a]t the pleading stage, standing is demonstrated 'by clearly pleading

5

allegations that plausibly suggest each element of standing …' ***Conclusory allegations will not suffice***." *Blanco v. Bath & Body Works, LLC*, No. 22 Civ. 01207, 2022 WL 1908980, at *2 (N.D. Ill. June 3, 2022) (emphasis added) (*citing Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018). "As the party invoking federal jurisdiction, a plaintiff bears the burden of establishing the elements of Article III standing." *Silha*, 807 F.3d at 173.

"Questions of statutory standing," as opposed to Article III standing, "are reviewed under Rule 12(b)(6), not Rule 12(b)(1)." *In re Fluidmaster, Inc.*, 149 F. Supp. 3d 940, 951 (N.D. Ill. 2016). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, "a court need not accept as true 'legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). And courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

**ARGUMENT**

**I.      Plaintiff Fails to Plead Article III Standing**

"To establish standing under Article III of the Constitution, a plaintiff must demonstrate (1) that [it] suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U. S. Bank N.A*, 140 S. Ct. 1615, 1618 (2020). Because Plaintiff's Complaint does not plead an injury-in-fact, Plaintiff lacks standing, and the Court need

not consider the remaining requirements under Article III. *See Dahl v. Kohn L. Firm*, 853 F. App'x 1, 2 (7th Cir. 2020) (injury-in-fact is the "threshold requirement" in court's standing inquiry).[2]

A. <u>Plaintiff Does Not Plead an "Injury-in-Fact"</u>

"Regarding injury in fact, [the Seventh Circuit] has held that '[a] plaintiff who would have been no better off had the defendant refrained from the unlawful acts of which the plaintiff is complaining does not have standing under Article III of the Constitution to challenge those acts in a suit in federal court . . . It follows that a plaintiff's claim of injury in fact cannot be based solely on a defendant's gain; it must be based on a plaintiff's loss." *Silha,* 807 F.3d at 174–75 (*citing McNamara v. City of Chic.,* 138 F.3d 1219, 1221 (7th Cir. 1998) (collecting cases)). And, crucially, "[w]hen courts analyze standing, allegations matter. What matters here, then, is what [Plaintiff] alleged in [its] complaint." *Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021) (quotation marks and citation omitted).

**Plaintiff alleges no loss**. The Complaint does not allege that any client or prospective client has withheld business (or even considered withholding business) from Plaintiff for any reason remotely associated with DNP. Nor does the Complaint allege that Plaintiff has lost any revenue because of DNP's conduct, or that it has had to make additional expenditures because of DNP's conduct. And nor does the Complaint identify any connection between DNP's alleged conduct and harms to Plaintiff's reputation or goodwill.

---

[2] It is immaterial that this case is styled as a putative class action. *See Moyer v. Michaels Stores, Inc.*, No. 14 Civ. 561, 2014 WL 3511500, at *3 (N.D. Ill. July 14, 2014) ("That a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent'") (*quoting Simon v. E. Kentucky Welfare Rts. Org.,* 426 U.S. 26, 40 n.20 (1976)).

In lieu of such allegations, which are required to plead Article III standing, Plaintiff submits only conclusory assertions of vague, undefined "injury" that Plaintiff supposedly either has suffered already or is "likely" to suffer in the future. *See, e.g.*, Compl. ¶ 95 ("Plaintiff and the Class have been or are likely to be injured . . . either by direct diversion of clients from themselves to Defendant or by a lessening of the goodwill associated with their goods and services."). Beyond its own *ipse dixit*, though, Plaintiff offers no allegations tending to show that these asserted injuries actually exist.

But it is well established that such conclusory allegations – merely asserting that Plaintiff suffered some unspecified injur(ies) – without more, are *not* sufficient to plead Article III standing. *See Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 889 (7th Cir. 2017) (no Article III standing where claim of injury-in-fact was based only on "a conclusory allegation which we discard when considering well-pleaded factual allegations"); *Smith on behalf of Smith v. Health Care Serv. Corp.*, No. 19 Civ. 7162, 2021 WL 963814, at *4 (N.D. Ill. Mar. 15, 2021) (no Article III standing where plaintiff relied on "the complaint's assertions that 'Plaintiff and the class are likely to be harmed,'" a "'threadbare recital[]' of the required injury-in-fact" (quotation mark source omitted)); *Colon v. Dynacast, LLC*, No. 19 Civ. 4561, 2019 WL 5536834, at *5 (N.D. Ill. Oct. 17, 2019) ("Plaintiff's conclusory statement that she suffered 'risks, harmful conditions, and violations of privacy' is insufficient to plead injury in fact on its own"); *Allgire v. HOVG, LLC*, No. 16 Civ. 981, 2017 WL 1021394, at *4 (S.D. Ind. Mar. 16, 2017) ("Although the plaintiff has pled that he suffered a harm that **could** form the basis of injury in fact for standing, he has not adequately pled *facts* to demonstrate the *plausibility* of that allegation. Accordingly, the [p]laintiff has not adequately pled standing") (emphasis added); *Thrasher-Lyon v. Illinois Farmers Ins. Co.*, 861 F. Supp. 2d 898, 908 (N.D. Ill. 2012) (No Article III standing where "Plaintiff asserts in quite

conclusory terms [only] that she 'was damaged as a direct and proximate result' of Defendants' violations"); *cf. Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018) ("A mere reference to 'actual damages' in the complaint's prayer for relief does not establish Article III standing").

Nor can Plaintiff show standing to sue by vague allegations that it is "likely" to be injured in the future. *E.g.*, Compl. ¶ 95. To obtain standing based on an injury that has not yet occurred, the Plaintiff must show that such injury is "imminent." *Carney v. Adams*, 141 S. Ct. 493, 502 (2020). To be "imminent," an injury must be "certainly impending, or there [must be] a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quotation marks and citation omitted). The Complaint does not even *gesture* as satisfying these requirements. There is no asserted reason in the Complaint to conclude that there is *any* appreciable risk that a potential MillerKing, LLC client will divert business to DNP (or similar), let alone a "substantial risk" of such a harm.

At bottom, Plaintiff is asking this Court to "hold [DNP] accountable for [alleged] legal infractions" but not to redress any actual harm that DNP has caused to Plaintiff – precisely the type of relief that is *not* authorized under Article III. *See Madison Ave. Assocs.*, 926 F.3d at 332. As such, this <u>entire</u> case must be dismissed: Plaintiff lacks standing and, therefore, this Court lacks subject matter jurisdiction.

This is true even though Plaintiff insists that it has standing to sue DNP for the alleged unauthorized practice of law. The fact that Plaintiff may have such standing in *state court* does not mean it has standing in *federal* court. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) ("Injury in fact is a constitutional requirement, and '[i]t is settled that [a legislature] cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." (citation omitted)); s*ee also Bryant v. Compass Grp. USA, Inc.*, 958

9

F.3d 617, 622 (7th Cir. 2020) ("standing requirements in Illinois courts are more lenient than those imposed by Article III").  For all the reasons cited above, Plaintiff lacks standing to assert *any* claim in federal court – its unauthorized practice of law claim is not exempt just because an Illinois state court might have subject matter jurisdiction hear it.

**II.     Plaintiff's Lanham Act Claims Must be Dismissed**

    A.     <u>Plaintiff Lacks Statutory Standing</u>

Even if Plaintiff had managed to plead Article III standing (it did not), the Lanham Act requires a plaintiff to allege an "economic or reputational injury flowing *directly from the deception* wrought by [defendant's] advertising; and . . . that occurs when deception of consumers causes them to withhold trade from [plaintiff]." *AAVN, Inc. v. WestPoint Home, Inc.*, No. 17 Civ. 8329, 2019 WL 1168102, at *2 (N.D. Ill. Mar. 13, 2019) (emphasis added)  (*citing Lexmark*, 572 U.S. at 133); *see also TWD, LLC v. Grunt Style LLC*, No. 18 Civ. 7695, 2019 WL 5420153, at *5 (N.D. Ill. Oct. 23, 2019) (dismissing Lanham Act claims for want of statutory standing where "[t]he complaint is devoid of any allegations regarding [plaintiff]'s injured reputation or sales"); *Alan Ross Mach. Corp. v. Machinio Corp.*, No. 17 Civ. 3569, 2018 WL 6018603, at *3 (N.D. Ill. Nov. 16, 2018) (dismissing Lanham Act claim where plaintiff failed to plead a "'loss of commercial interest in sales or business reputation,' such as reduced sales").

Here, there is no allegation that Plaintiff lost any business, let alone from any specific client.  Nor is there any allegation that any lost business flowed *directly* from any alleged deception by DNP.  As a result, Plaintiff does not have statutory standing under the Lanham Act.

*AAVN v. WestPoint* is instructive.  There, AAVN (a textile manufacturer) sued an alleged competitor (WestPoint) under the Lanham Act, claiming that WestPoint's advertising misrepresented the thread count of its *own* textiles.  2019 WL 1168102 at *1.  In support of its

Lanham Act claims, AAVN alleged that "that harm done . . . through [WestPoint's] false and misleading advertising statements also injure[s] AAVN's business, reputation, and goodwill." *Id.* at *2.

However, "AAVN ma[de] no attempt in its Verified Complaint to connect how the alleged false advertising on WestPoint's sheet packaging harms AAVN." *Id.* The court dismissed the Lanham Act claims for lack of statutory standing, explaining that "[w]ithout specifics regarding . . . how WestPoint's alleged false advertising impacted AAVN's ability to sell its product, AAVN fails to demonstrate statutory standing." *Id.* at *3.

Here, like AAVN, Plaintiff makes various allegations that DNP engaged in false affiliation and false advertising but makes no attempt to connect DNP's alleged misstatements to some actual harm to its business. Without such specifics, Plaintiff lacks statutory standing, and its Lanham Act claims must be dismissed.

**III.    Plaintiff's IUDTPA Claim Must Be Dismissed**

        A.        <u>Plaintiff Lacks Statutory Standing</u>

As a threshold matter, because Plaintiff lacks statutory standing to assert Lanham Act claims, it also lacks statutory standing to assert an IUDTPA claim – it is well established that such claims rise and fall together. *See AAVN*, 2019 WL 1168102 at *4 ("Because [plaintiff] does not have standing to pursue its claims under the Lanham Act, it also does not have standing to continue on its claims arising under the IUDTPA"); *Platinumtel Commc'ns, LLC v. Zefcom, LLC*, No. 08 Civ. 1062, 2008 WL 5423606, at *8 (N.D. Ill. Dec. 30, 2008) ("As Platinumtel's Lanham Act claim fails [for lack of statutory standing], so too do its ICFA and IUDTPA claims"); *Gimix, Inc. v. JS & A Grp., Inc.*, 699 F.2d 901, 908 (7th Cir. 1983) (Lanham Act and state law false advertising claims rise and fall together).

11

B.  DNP's Challenged Activity Did Not Occur "Primarily and Substantially" in Illinois

IUDTPA "does not have extraterritorial effect" and, therefore, a plaintiff cannot recover on a claim for violations of the IUDTPA unless the challenged conduct occurred "primarily and substantially in Illinois." *BCBSM, Inc. v. Walgreen Co.*, 512 F. Supp. 3d 837, 856 (N.D. Ill. 2021) (*quoting Avery*, 216 Ill. 2d at 185). This rule developed in consideration of the "larger comity- and potentially Constitution-based limitations on extraterritorial application of state law" that potentially prevent the Illinois legislature from imposing penalties for conduct that occurs nationwide (and not primarily in Illinois). *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 809 F. Supp. 2d 857, 861 (N.D. Ill. 2011).

Consistent with this rule, Courts routinely dismiss IUDTPA claims where "transactions are alleged to occur throughout the United States, and Illinois just happens to be one of those states." *FireBlok IP Holdings*, 2021 WL 6049964 at *4; *see also Life After Hate, Inc. v. Free Radicals Project, Inc.*, No. 18 Civ. 6967, 2020 WL 1903956, at *10 (N.D. Ill. Apr. 16, 2020) (dismissing IUDTPA claim where alleged harm from challenged conduct did not accrue "in Illinois more so than in any other state"); *LG Elecs. U.S.A., Inc.*, 809 F. Supp. 2d at 862 (dismissing IUDTPA claim concerning "Whirlpool's nationwide advertising of its dryers" for failure to satisfy the primarily and substantially requirement).

The instant Complaint falls short of the "primarily and substantially" test. Other than identifying two DNP services that happen to be available in Illinois (in addition to other states), *supra* at 2, the Complaint says *nothing* regarding how DNP's alleged misconduct affected Illinois, let alone "primarily and substantially." This is a separate and independent reason why, the IUDTPA claim must be dismissed.

## IV. If Only Count IV Survives, the Court Should Decline to Exercise Supplemental Jurisdiction Over that Claim

In the event the Court dismisses Counts I, II and III (Lanham Act and IUDTPA), but does not dismiss Count IV (unauthorized practice of law), this Court should decline to exercise supplemental jurisdiction over Count IV. 28 U.S.C. 1367(c)(3) allows a Court to "decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." If Counts I-III are dismissed, that criterion will be met. In fact, Plaintiff does not even appear to allege that this Court has original jurisdiction to decide the unauthorized practice of law claim. *See* Compl. ¶ 11.

The Seventh Circuit has identified only three instances in which a Court should *not* divest itself of jurisdiction over remaining state law claims after federal claims have been dismissed: "where the statute of limitations would bar the refiling of the supplemental claims in state court. . . .; where substantial federal judicial resources have already been expended on the resolution of the supplemental claims; and where it is obvious how the claims should be decided." *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007). None of these circumstances exists here – accordingly, it would be an appropriate exercise of this Court's discretion to decline to hear the unauthorized practice of law claim in the event that the others are dismissed.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Complaint be dismissed in its entirety.

| | |
|---|---|
| Dated: May 16, 2023 | **LEWIS RICE LLC**<br><br>By: /s/ Richard B. Walsh, Jr.<br>Richard B. Walsh, Jr. #6187007IL<br>Jerina D. Phillips, #65103MO<br>600 Washington Avenue, Suite 2500<br>St. Louis, MO 63101<br>Telephone: (314) 444-7722<br>rwalsh@lewisrice.com<br>jphillips@lewisrice.com<br><br>**WILSON SONSINI GOODRICH & ROSATI**<br>**Professional Corporation**<br><br>By: /s/ Dale R. Bish<br>Dale R. Bish (*pro hac vice forthcoming*)<br>Allie Fellows (*pro hac vice forthcoming*)<br>650 Page Mill Road<br>Palo Alto, CA 94304<br>dbish@wsgr.com<br>afellows@wsgr.com<br><br>Eli B. Richlin (*pro hac vice forthcoming*)<br>Paul C. Gross (*pro hac vice forthcoming*)<br>1301 6th Ave., 40th Floor<br>New York, NY 10019<br>erichlin@wsgr.com<br>pgross@wsgr.com |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of May, 2023, a true and correct copy of the foregoing was electronically filed and served on all counsel of record via the Court's CM/ECF system.

/s/ Richard B. Walsh, Jr.

14